DOMENGEAUX, Chief Judge.
First Acadiana Bank appeals a judgment rejecting, in part, its demands against the guarantors of three promissory notes. The guarantors have also appealed.
FACTS
First Acadiana Bank filed suit initially via ordinary process to collect a balance of $350,959.35 due on three promissory notes executed by Larry R. Bieber. In the same suit, the bank also sought to enforce three continuing guaranties, totalling $100,-000.00, executed by Larry’s father Rhein-hard Bieber, and one continuing guaranty for $25,000.00 executed by Rheinhard Bie-ber and Robert Spears.
Subsequently, this proceeding was stayed after Larry Bieber filed for bankruptcy. Prior to Larry Bieber’s discharge in bankruptcy, the United States Bankruptcy Court abandoned the movable and immovable property which secured his debts to First Acadiana Bank. The bank filed a separate action via executory process, and this property was sold for $124,600.00 at a sheriff’s sale.[1] First Acadiana Bank then resumed prosecution of this action against only the two guarantors, Rheinhard Bieber and Robert Spears.
The trial judge found that the notes secured by Rheinhard Bieber’s three continuing guaranties had been paid, and the court entered judgment in his favor on those guaranties. However, the trial court also entered judgment in favor of plaintiff for $25,000.00, after finding that Rheinhard Bieber and Robert Spears admitted liability on the one guaranty they both signed.
On August 30, 1988, defendants Spears and Rheinhard Bieber deposited $25,000.00 in the registry of the court, without reserving their right to appeal. First Acadiana Bank appealed devolutively on November 1, 1988 and defendants answered the appeal seeking reversal of that part of the judgment rendered against them for $25,-000.00. On December 22, 1988, after a contradictory hearing, the trial court allowed First Acadiana Bank to withdraw the funds in the registry, in satisfaction of the judgment rendered in its favor. Defendants then filed a motion to dismiss plaintiff’s appeal, contending the withdrawal of the $25,000.00 amounted to an acquiescence in the trial court’s judgment.
MOTION TO DISMISS APPEAL
La. C.C.P. art. 2085 provides:
An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. Confession or acquiescence in part of a divisible judgment or in a favorable part of an indivisible judgment does not preclude an appeal as to other parts of such judgment.
Appeals are favored, and forfeiture of a party’s right to appeal should only be decreed when the party’s intention to acquiesce and abandon his right is clearly demonstrated. PatIn v. PatIn, 453 So.2d 334 (La.App. 3rd Cir.1984). Acquiescence is not demonstrated by proof that a party favored by a judgment accepts payment from a party cast or causes execution on the judgment. Coleman Oldsmobile, Inc. v. Johnson, 474 So.2d 20 (La.App. 1st Cir.1985).
Defendants argue plaintiff forfeited its right to appeal when it withdrew the funds without reservation of its right to proceed further. We find no merit to this *1028 contention. First Acadiana Bank had already filed its devolutive appeal over one month before it withdrew the funds, which had been on deposit with the Clerk of Court for almost four months. These facts do not demonstrate the clear intent to abandon an appeal, as required by the jurisprudence cited above. Although the motion is meritless, we decline to impose sanctions under La.C.C.P. art. 863, as requested by plaintiff.
THE CONTINUING GUARANTY AGREEMENTS
Rheinhard Bieber executed three separate continuing guaranties as security for his son’s debts: one on September 7, 1983, with a limit of $38,000.00, another on June 12, 1984, for $32,000.00, and a third on July 12, 1984, with a limit of $30,000.00. The notes sued upon were executed by Larry Bieber between April 1985 and March 1986. At trial, Rheinhard Bieber argued the three guaranties he signed were intended' to secure certain other notes which had already been returned to Larry Bieber as “paid” before this suit was filed. In support of this argument he introduced evidence of the bank’s practice of listing each note’s collateral on the note itself. The evidence at trial showed that all notes which listed these guaranties as security had been marked “paid.”
According to Rheinhard Bieber, the notes in this suit represented an additional indebtedness incurred by his son which Rhe-inhard did not intend to guarantee. At trial, he introduced an unsigned guaranty with a limit of $100,000.00, which the Bank presented to him, and which he refused to sign.
In Guaranty Bank of Mamou v. Community Rice Mill, 502 So.2d 1067 (La.1987), our Supreme Court considered, and rejected, these same arguments. Specifically, the Court stated:
Second, they argue that the guaranty instrument must be interpreted in light of the Bank’s practice of recording on each of its debt instruments the collateral securing payment of that debt. Because only the note on which the Bank listed the continuing guaranty as security was marked paid before the suit was filed, the estate and heirs contend that their obligation under the guaranty is satisfied. The continuing guaranty agreement alone evidences the party’s intent as to which of the Mill’s debts it secured. Since the above quoted language in the guarantee agreement does not limit the guarantor’s liability to any particular debt instrument, this claim lacks merit. (Emphasis provided).
502 So.2d 1067, 1071 (La.1987).
The continuing guaranties executed by Rheinhard Bieber are similar to the guaranty considered in Community Rice Mill. They provide that Rheinhard Bieber shall be responsible for any of his son’s debts to plaintiff, up to the amount of each guaranty, and they further provide that revocation of the agreement is effective only upon written notification to the bank’s directors. Defendant presented no evidence of revocation of the agreements; hence, they were still in effect when the notes sued upon were executed. See Merchants Trust & Savings Bank v. Olano, 512 So.2d 1218 (La.App. 5th Cir.1987).
In holding that the three guaranties did not secure the notes in this suit, the trial court ignored the unambiguous language of these instruments, which were the law between the parties. Nevertheless, for reasons discussed below, we find the trial court reached the correct result as to the three guaranties signed by Rheinhard Bie-ber.
We also find the trial judge reached the correct result regarding the one guaranty signed by Spears and Rheinhard Bie-ber. Both defendants admitted liability on this instrument at trial, and they deposited the sum of $25,000.00 with the Court’s registry, without reserving their right to appeal. These actions of the defendants preclude our review of this portion of the judgment under La.C.C.P. art. 2085.
THE LOUISIANA DEFICIENCY JUDGMENT ACT
Rheinhard Bieber argues First Acadiana Bank should be prohibited from obtaining a deficiency judgment against him, as the principal debtor’s guarantor, because the bank failed to establish in the *1029 executory process suit the variable interest rate of the hand notes sued upon.[2]
In Guaranty Bank of Mamou v. Community Rice Mill, at 490 So.2d 736, this Court, relying on established jurisprudence, held the defenses available to the debtor under La.R.S. 13:4106 may also be raised by the debtor’s surety. We reasoned that allowing a creditor to proceed against the surety, when he could not do so against the debtor, would circumvent the deficiency judgment act, which the legislature has declared to be a matter of public policy. La.R.S. 13:4107. Simmons v. Clark, 64 So.2d 520 (La.App. 1st Cir.1953); GMAC v. Smith, 399 So.2d 1285 (La.App. 4th Cir.1981); Domingues Motors, Inc. v. La-Londe, 417 So.2d 900 (La.App. 3rd Cir.1982).[3]
On appeal, at 502 So.2d 1067, the Supreme Court reversed our judgment in favor of the guarantors, holding the deficiency judgment act was not applicable because the judicial sale in that case was via ordinary process, rather than executory process. Unlike the creditor in Community Rice Mill, the bank here chose to foreclose by executory process. We therefore conclude that the policies underlying our original opinion in Community Rice Mill, and the cases cited therein, are applicable here. We view this suit as one for a deficiency judgment, governed by La.R.S. 13:4106.
Defects as to form in a foreclosure by executory process will no longer defeat the creditor’s right to a deficiency judgment under La.R.S. 13:4106. First Guaranty Bank of Hammond v. Baton Rouge Petroleum Center, 529 So.2d 834 (La.1987), overruling League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968). The creditor’s right to a deficiency judgment is based solely upon submission of evidence establishing the existence of the obligation, the amount of the deficiency due, and that the property has been sold with benefit of appraisal. Nick’s Auto Sales, Inc. v. Blakes, 530 So.2d 1195 (La.App. 2nd Cir.1988).
First Acadiana Bank did not establish, either in this suit or in the suit under executory process, the variable interest rate of the notes sued upon. We find this omission to be fatal in a suit for deficiency judgment because the creditor has not established the amount of the deficiency due. In City Bank & Trust of Shreveport v. Evans, 542 So.2d 1160 (La.App. 2nd Cir.1989), the Second Circuit was confronted with a similar situation. However, in that case the parties entered into evidence a stipulation which established the balance due, the interest rate and all credits. We have no such evidence here. Without evidence of the variable interest rate, the creditor has not proven all elements required for deficiency judgment. We find merit in this assignment of error.
For the above and foregoing reasons the trial court judgment in favor of Rheinhard Bieber, rejecting the demands of First Aca-diana Bank on the three guaranties signed by Rheinhard Bieber, is affirmed, and the trial court judgment in favor of First Aea-diana Bank in the amount of $25,000.00 against Robert Spears and Rheinhard Bie-ber is likewise affirmed.
AFFIRMED

. Defendants argue plaintiff improperly converted an ordinary action to executory process in violation of La.C.C.P. art. 2644. Without expressing any opinion as to the merits of this argument, we note that this defense should have been raised in the executory proceedings. After First Guaranty Bank of Hammond v. Baton Rouge Petroleum Center, 529 So.2d 834 (La.1987), this defense no longer prevents a creditor from obtaining a deficiency judgment. See Academy Mortgage Company v. Fireman’s Fund Insurance Company, 542 So.2d 729 (La.App. 4th Cir.1989).

. Plaintiff did not respond to these arguments in brief, contending they constitute an affirmative defense which was not specifically pled. However, the record reflects that the entire record of the suit under executory process was admitted into evidence in this suit without objection from plaintiff’s counsel. Additionally, plaintiffs counsel fully argued these issues before the trial court. We consider this to be an amendment of the pleadings to conform to the evidence under La.C.C.P. art. 1154.

. Jurisprudence interpreting the rights of endorsers and sureties under the deficiency judgment act has been less than consistent. For a conflicting line of cases, which holds that La. R.S. 13:1406 benefits only those persons who have proprietary interests in the property sold at the judicial sale, see Southland Investment Company v. Motor Sales Company, 198 La. 1028, 5 So.2d 324 (1941); Whitney National Bank of New Orleans v. Derbes, 436 So.2d 1185 (La.App. 4th Cir.1983), writ denied, 441 So.2d 1220 (La.1983), cert. denied, 104 S.Ct. 1912, 466 U.S. 938, 80 L.Ed.2d 460 (1984). Perhaps the case sub judice would be an appropriate one for the Louisiana Supreme Court to grant writs in order to clarify the jurisprudence.