JjPICKETT, Judge.
The plaintiff appeals the trial court’s order allowing a sale of the right to sue in lesion. On March 14, 1995, George Russell Chambers, acting on his own behalf and on the behalf of Calcasieu TV & Radio, Inc., a corporation owned by him, granted W. Brent Lumpkin an option to purchase and listing agreement of 24.77 acres. The purchase price in the agreement was $1,200,000.00. George Russell Chambers died in Lake Charles, Louisiana, on March 27,1995.
The decedent’s succession was opened, and his widow, Rita S. Chambers, and his son, Dr. Russell C. Chambers, were appointed co-executors. Rita Chambers and Dr. Chambers entered into a compromise agreement wherein any disagreement in the administration of the succession would be submitted to the court.
On June 14, 1996, Lumpkin gave notice of his intention to exercise the option to purchase. Rita S. Chambers filed a petition for the sale of immovable property to Rgain court approval of the sale to Lumpkin. This petition was advertised on October 25, 1996, and November 14, 1996. The sale to Lump-kin was authorized by order of the court on December 5, 1996. The sale was completed on February 7, 1997, for the purchase price of $1,200,000.00.
Thereafter, James Pauley and LBT, L.L.C. (LBT) approached Dr. Chambers with an offer to convey to the succession future parking rights on the land conveyed to Lumpkin in exchange for the right to sue Lumpkin in lesion for the return of the property. Dr. Chambers obtained approval for this transaction by an ex parte motion, which was later set aside on the motion of Rita S. Chambers.
On August 1, 1997, Dr. Chambers again petitioned the court for the authority to sell to James Pauley and LBT the right to sue in lesion and in return the succession would receive thirty percent membership right in LBT. On August 19, 1997 Rita S. Chambers filed an opposition to this proposed transaction.
The Succession of George R. Chambers received another offer concerning the succession’s rights to a lesionary action. Pujo Oil & Gas Company, Inc. (Pujo) offered to purchase property contiguous to that sold to Mr. Lumpldn on the condition that the succession execute a waiver of any right to sue in lesion. After which, Pete Pauley, James Pauley’s brother, offered to buy the same property without requiring the succession to execute the waiver.
The trial court considered these matters in a hearing on February 5, 1998. The trial court ultimately denied Pujo’s offer and ordered that Pete Pauley’s offer be properly advertised and noticed. The trial court also ordered the succession’s lesionary rights be transferred to LBT. Although the order was signed on February 5,1998, the court did not issue written reasons, but the trial court did discuss its reasoning in open court.
| ¡¡Rita S. Chambers has appealed the trial court’s decision to transfer the lesionary rights to LBT on several grounds. However, *610 we will first address the contention by Dr. Chambers that Rita S. Chambers lacks capacity to bring this appeal.
CAPACITY
Dr. Chambers argues that Rita S. Chambers lacks capacity to file this appeal and has no right of action. This argument is based on the compromise agreement these parties entered into regarding administration of the succession. The pertinent portion of the agreement reads as follows:
Rita Chambers and Dr. Chambers shall jointly serve as the dative testamentary executors of the GRC Estate (the “Dative Executors”). Julie Askew shall resign as a co-executrix effective immediately upon qualification of her successor. Unanimous consent shall be required for all action taken by the Dative Executors, provided, however, that if they are unable to agree, they shall submit the matter to the appropriate court for resolution.
(Emphasis added.)
Dr. Chambers’ contention centers around the provision that all actions must be a result of an unanimous agreement. This interpretation fails to give full effect to this provision, which requires disagreements to be submitted to the courts for resolution. That is precisely what was done in this instance. The parties were unable to agree on the transfer of any right to sue in lesion. Rita Chambers then opposed the sale by filing an opposition as co-executrix. After the trial court ruled against Rita Chambers, Dr. Chambers argument is that she is then required to get the consent of her opponent or the approval of the trial court to appeal. This interpretation is unreasonable, judicially inefficient and could not have been the intent of the parties when they entered into this agreement. “Appeals are favored, and forfeiture of a party’s right to appeal should only be decreed when the party’s intention to acquiesce and abandon his right is clearly demonstrated.” First Acadiana Bank v. Bieber, 562 So.2d 1025, 1027 (La.App. 3 Cir.1990), rev’d on other grounds, 582 So.2d 1293 (La.1991). When parties agree to submit future disputes to “the appropriate court,” this does not indicate forfeiture of any future rights to appeal. Indeed, it is much more likely that when a party agrees to such a provision the utilization of the entire judicial process is envisioned. Therefore, we find Dr. Chambers’ argument meritless.
As we find the compromise agreement does not clearly demonstrate Rita S. Chambers’ intention to abandon her right to appeal as co-executrix, we need not explore the issue of whether she is acting as a co-executrix, heir or legatee.
EXISTENCE OF LESION
Rita S. Chambers’ first assignment alleges that the trial court erred in ordering the transfer of any lesionary rights to LBT on the basis that no right to a lesionary action existed.
Plaintiff argues that there is no right to sue in an action of lesion beyond moiety under La.Civ.Code art. 2589 for the trial court to transfer to LBT.
The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables. It cannot be alleged in a sale made by order of the court.
The seller may invoke lesion even if he has renounced the right to claim it.
La.Civ.Code art. 2589 (emphasis added.)
Article 2589 is a statement of the law combined from several articles under the 1870 Code, one of these articles being article 2594, which stated:
Rescission for lesion beyond moiety is not granted against sales of movables and produce, nor when rights to a succession have been sold to a stranger, nor in matter of transfer of credits, nor against sales of immovable property made by virtue of any decree or process of a court of justice.
IsThis court has previously determined that a sale of a minor’s interest in timber authorized by a court could not be invalidated by lesion beyond moiety. Fogleman v. Roy O. Martin Indus., Inc., 440 So.2d 954 (La.App. 3 Cir.1983). In Fogleman, Mrs. Fogleman, acting on behalf of herself and on behalf of her minor son as tutrix, sought to execute a sale of 580 acres of timber to the defendant *611 in that case. She petitioned the district court for the authorization to sell her son’s interest in the timber, and the court approved the sale. Mrs. Fogleman later attacked the sale as lesionary. In disallowing the lesion action against the sale of the minor’s interest, that panel of the third circuit held that the approval of the sale by the district court constituted a judicial sale. The court further rejected an earlier case from the first circuit which under a similar fact pattern to that in Fogleman, held that a “judicial sale” only applied to public auctions. See Middle Tennessee Council, Inc., Boy Scouts of America v. Ford, 205 So.2d 867 (La.App. 1 Cir.1967).
Although Fogleman dealt with a tutrix’s sale of a minor’s immovable property, the reasoning relied upon is equally applicable to the case sub judice.
In conformity with tradition, rescission is not possible except for sales of immov-ables. Art. 1674 says so expressly, by stating that the vendor suffers lesion ‘in the price of an immovable.’ And further, such an action is not admitted in every case involving sale of an immovable. In fact an exception should be made in two kinds of sales:
‡ ‡
(2) Sales made by Authority of the Court (Art. 1684). The reason for this exception appears to have been based on the guaranties which this kind of sale offers because of its publicity. ‘The just price of things,’ said Pothier ‘is the price at which they can be sold.’ Furthermore when the auction has not produced favorable results, there is a special proceeding, the ‘re-auction of the sixth,’ which permits raising the price of the adjudication (Art. 708, C.Proc.Civil). To annul the sale and to proceed to a new adjudication would augment the expenses considerably, and probably would not give a better result. Art. 1684 reproduces a traditional rule (Po-thier, Vente, No. 340).
^Furthermore, this exception does not apply to all judicial sales but only those which, according to the law, can only be made by authority of the court. Such are sales upon seizure, sales' of property' of minors or of interdicts, and sales in ease involving the acceptance of a succession under benefit of inventory. (Cass.Req., 7 Nov. 1927, D.1928.1.43, with the report of M. Pringue). But judicial sales which could just as well have been made privately remain subject to the general rules of law and are rescindable for lesion.
Fogleman, 440 So.2d at 958-959, quoting 2 M. Planiol, Traite elementaire de droit civil (An English Translation by the Louisiana Law Institute) Part I, No. 1589 at 880-881.
Like the sale of a minor’s property by a tutor, a sale of succession property by a succession representative must be approved by the court. La.Code Civ.P. art. 3281. It is also equally clear that as a matter of public policy to preserve the validity of sales made by court authorization.
Accordingly, we hold that lesion beyond moiety does not exist in a sale of succession property authorized by the court. As no such right to sue in lesion exists, the trial court improperly transferred the right to LBT, L.L.C as such an agreement of transfer is null as the object of the agreement does not exist.
For the above reasons, the judgment of the trial court is reversed and the transfer of any right to sue in lesion is set aside. Costs of this appeal are assessed to the defendant-appellees.
REVERSED.